IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00209-RM-NYW

CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

    Plaintiff,

v.

PHILLIP MARSHALL COUTU, an individual,
POWER ADJUSTERS, INC., a Colorado corporation,
JUDAH LEON BENSUSAN, an individual, and
ATLANTIS CLAIMS SERVICES, LLC, a Florida limited liability company,

    Defendants.

---

## ORDER

Magistrate Judge Nina Y. Wang

    This matter is before the court on two related motions:

    (1)    Motion to Quash Subpoena to Non-Party Keith Frankl and/or the Frankl Law Firm, P.C. (the "Frankl Motion") filed by Interested Party Keith Frankl [#91,[1] filed July 14, 2017]; and

    (2)    Motion to Quash Pursuant to Fed.R.Civ.P. 45(d)(3)(B) of Subpoena Duces Tecum to the Frankl Law Firm and For Protective Order (the "Defendants' Motion") filed by Defendants Phillip Marshall Coutu ("Mr. Coutu"), Power Adjusters, Inc. ("Power Adjusters"), Judah Leon Bensusan ("Mr. Bensusan"), and Atlantis Claims Services, LLC's ("Atlantis") (collectively, "Defendants") [#92, filed July 14, 2017].

---

[1] [#_] is an example of a convention this court uses when referring to documents in the instant matter, whereas [ECF. No. _] is a convention the court uses to refer to documents in other proceedings. Further, when citing to a transcript, this court uses the ECF docket number, but cites to the page and line numbers as assigned in the original transcript.

The undersigned considers the Motions pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated March 30, 2017 [#33], and the memorandum dated July 17, 2017 [#93]. Upon careful review of the Motions and associated briefing, the entire case file, and applicable law, this court GRANTS IN PART and DENIES IN PART the Frankl Motion and GRANTS the Defendants' Motion for the reasons stated herein.

**BACKGROUND**

This court has discussed the background of this case in its prior Orders, *see e.g.*, [#103; #120], and does so here only as it pertains to the instant Motions. Plaintiff Church Mutual Insurance Company ("Plaintiff" or "Church Mutual") initiated this action by filing its Complaint in this District on January 23, 2017. [#1]. Plaintiff's Complaint alleged two claims against the Defendants: (1) civil conspiracy and (2) fraudulent concealment. [*Id.*]. The events giving rise to Plaintiff's Complaint involved an appraisal award issued to one of Church Mutual's policyholders for repairs completed to the policyholder's roof following a hailstorm. [*Id.*]. Plaintiff alleged that Defendants conspired to unlawfully inflate the cost of repairs needed for their own economic gains, as each had a stake in a higher appraisal award. [*Id.*].

Following several extensions of time to answer or otherwise respond to Plaintiff's Complaint, and pursuant to this court's Order [#46], Plaintiff filed its First Amended Complaint ("FAC") on April 25, 2017, and asserts the following claims: (1) civil conspiracy against all Defendants ("Claim I"); (2) fraudulent concealment against all Defendants ("Claim II"); (3) federal civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all Defendants ("Claim III"); (4) federal civil RICO conspiracy against Messrs. Coutu and Bensusan ("Claim IV"); and (5) state civil violations of the Colorado Organized Crime Control Act ("COCCA") against Messrs. Coutu and Bensusan ("Claim V"). [#49]. On June 5,

2017, Defendants filed a Joint Motion to Dismiss all five of Church Mutual's claims [#65], which the undersigned recommended granting in part and denying in part [#120]. Specifically, this court recommended dismissing Plaintiff's RICO and COCCA claims (Claims III-V) for failure to state a claim. *See* [*id.*]. Also on June 5, 2017, Defendants filed a Motion to Stay discovery. [#64]. This court denied the Motion to Stay and directed the Parties to limit discovery to the "Montview matter and the relationships between the four Defendants." *See* [#103 at 7]. This included formal discovery of information held by John Kezer, related to the adjustment of the Montview claim and his relationship to Defendants and other entities controlled by Defendants, as well as "third party subpoenas only to the extent that they relate to these specific issues and after an agreement by the Parties or a ruling of this court that the discovery sought is not obtainable from Defendants." [*Id.* at 8].

On July 14, 2017, Defendants and Mr. Frankl filed the instant Motions, seeking to quash a subpoena duces tecum (the "Subpoena") Plaintiff served on Mr. Frankl and the Frankl Law Firm. *See* [#91; #92]. The Subpoena requests twenty-eight (28) categories of documents regarding Mr. Frankl and the Frankl Law Firm's representation of Defendants or their association with Defendants. *See* [#91-1]. These include:

1. Produce all contracts, including but not limited to, engagement letters, fee agreements, contingent fee agreements, between **You** and Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

2. Produce all contracts, between and/or among, any combination of the following: Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., John Kezer, Jones & Keller, P.C., and/or the **Affiliated Coutu Entities**.

3. Produce all contracts, between Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**, on the hand [sic], and policyholders presented by Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services,

3

LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**, on the other hand.

4. Produce all communications, including but not limited to, written correspondences and email, between Philip Coutu and Leon Bensusan related to any insurance claim, any demand for an appraisal, any nomination of an appraiser or umpire, and/o any appraisal award.

5. Produce all communications, including but not limited to, written correspondences and email, between Philip Coutu, on the one hand, and Garrett Kurtt or his company Ecoblast, LLC on the other, related to any demand for appraisal, any nomination of an appraiser or umpire, and/or any appraisal award.

6. Produce all demand letters, including but not limited to, correspondence threatening appraisal, threatening complaints to the Division of Insurance or otherwise threatening claims for breach of contract, bad faith breach of contract, and/or violation of C.R.S. §§ 10-3-1115 and -1116, which are related to insurance claims made on behalf of Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

7. Produce all demand letters, including but not limited to, correspondence threatening appraisal, threatening complaints to the Division of Insurance or otherwise threatening claims for breach of contract, bad faith breach of contract, and/or violation of C.R.S. §§ 10-3-1115 and -1116, which are related to insurance claims made on behalf of policyholders represented by Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

8. Produce all complaints, answers, third-party complaints, pleadings containing counter claims, pleadings containing cross claims, motions to intervene, and motions to quash, filed on behalf of Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

9. Produce all complaints, answers, third-party complaints, pleadings containing counter claims, pleadings containing cross claims, motions to intervene, and motions to quash, filed on behalf of policyholders represented by Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

10. Produce all demands for appraisal in insurance claims made on behalf of Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

11. Produce all demands for appraisal in insurance claims made on behalf of policyholders represented by Philip Coutu, Leon Bensusan, Power Adjsuters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

12. Produce all correspondence appointing Leon Bensusan and/or Atlantis Claims Services, LLC to serve as an appraiser in insurance claims made on behalf of Philip Coutu, Power Adjusters, Inc., Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

13. Produce all correspondence appointing Garrett Kurtt and/or Ecoblast LLC to serve as an appraiser in insurance claims made on behalf of Philip Coutu, Power Adjusters, Inc., Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the Affiliated Coutu Entities.

14. Produce all correspondence appointing Leon Bensusan and/or Atlantis Claims Services, LLC, to serve as an appraiser in insurance claims made on behalf of policyholders represented by Philip Coutu, Power Adjusters, Inc., Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities.**

15. Produce all correspondence appointing Garrett Kurtt and/or Ecoblast LLC to serve as an appraiser in insurance claims made on behalf of policyholders represented by Philip Coutu, Power Adjusters, Inc., Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

16. Produce all correspondence disclosing any financial or personal interest of Leon Bensusan and/or Atlantis Claims Services, LLC, in the outcome of any appraisal.

17. Produce all correspondence disclosing any financial or personal interest of Garrett Kurtt or Ecoblast LLC, in the outcome of any appraisal.

18. Produce all correspondence disclosing any current or previous relationship between Leon Bensusan and/or Atlantis Claims Services, LLC, on the one hand, and a party to any agreement to appraise, a party to any appraisal proceeding, their counsel or representatives, including licensed public adjusters, a witness, another appraiser, or the umpire, on the other hand.

19. Produce all correspondence nominating John Kezer and/or Jones & Keller, P.C., to serve as an umpire in insurance claims made on behalf of Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

20. Produce all correspondence nominating John Kezer and/or Jones & Keller, P.C., to serve as an umpire in insurance claims made on behalf of policyholders represented by Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services,

LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

21. Produce all correspondence disclosing any financial or personal interest of John Kezer and/or Jones & Keller, P.C., in the outcome of any appraisal.

22. Produce all correspondence disclosing any current or previous relationship between John Kezer and/or Jones & Keller, P.C., on the one hand, and a party to any agreement to appraise, a party to any appraisal proceeding, their counsel or representatives, including licensed public adjusters, a witness, another appraiser, or the umpire, on the other hand.

23. Produce all appraisal awards that resulted from insurance claims made on behalf of Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

24. Produce all appraisal awards that resulted from insurance claims made on behalf of policyholders represented by Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

25. Produce all appraisal awards from insurance claims where Leon Bensusan and/or Atlantis Claims Services, LLC, served as an appraiser.

26. Produce all appraisal awards from insurance claims where John Kezer and/or Jones & Keller, P.C., served as an umpire.

27. Produce all settlement agreements, including but not limited to settlement agreements made in pre-litigation matters, in insurance claims made on behalf of Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

28. Produce all settlement agreements, including but not limited to settlement agreements made in pre-litigation matters, in insurance claims made on behalf of policyholders represented by Philip Coutu, Leon Bensusan, Power Adjusters, Inc., Atlantis Claims Services, LLC, Rooftop Restoration, Inc., Rooftop Roofing, Inc., and/or the **Affiliated Coutu Entities**.

Mr. Frankl contends that the subpoena seeks an enormous amount of overly broad documents relating to sensitive client information that is irrelevant to this action. *See* [#91 at 2–3]. Similarly, Defendants assert that the subpoena is overbroad, and seeks documents

implicating the attorney-client privilege, many of which that are irrelevant.[2]  *See* [#92 at 2–3]. Plaintiff argues that the subpoena requests only relevant information, and production of these documents will not burden Mr. Frankl or the Frankl Law Firm. [#111]. Because the Motions are ripe for resolution, the court turns to the Parties' arguments below.

## LEGAL STANDARDS

### I.     Rule 26(b)(1)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

This scope for discovery does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26 effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that the phrase had been used incorrectly by parties and courts to define the scope of discovery, which "might swallow any other limitation on the scope of

---

[2] As an initial matter, a "party generally lacks standing to challenge a subpoena issued to a non-party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *United States v. Tucker*, 249 F.R.D. 58, 60 n. 3 (S.D.N.Y. 2008). Here, however, Mr. Frankl and the Frankl Law Firm initially represented Mr. Bensusan and Atlantis, but soon withdrew from this matter. Further, the Subpoena requests documents relating to Mr. Frankl and the Frankl Law Firm's representation of Defendants in prior lawsuits; thus, the court finds that Defendants have adequate standing to challenge the Subpoena on the basis of privilege and that the Subpoena implicates their interests in maintaining certain documents as confidential.

7

discovery." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). The applicable test is whether the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

## II. Rule 45

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. U.S.*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995). Accordingly, a subpoena is bounded by the same standards that govern discovery between the parties – to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses, and are proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In addition, discovery conducted pursuant to a Rule 45 subpoena must be concluded by the deadline specified in the court's Scheduling Order. *Grant v. Otis Elevator Co.*, 199 F.R.D. 673, 675 (N.D. Okla. 2001); *Rice*, 164 F.R.D. at 558.

On a timely motion, the court must quash or modify a subpoena that, *inter alia*: (1) fails to allow a reasonable time to comply; (2) requires the disclosure of privileged or other protected matter, if no exception or waiver applies; (3) subjects a person to undue burden; or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B).

## ANALYSIS

As mentioned, this court recently issued a Recommendation on Defendants' Joint Motion to Dismiss. In that Recommendation, this court concluded that Plaintiff's FAC plausibly alleged

a fraudulent concealment and civil conspiracy claim against the named Defendants, based on their concealment and/or nondisclosure of their financial ties and interests in the *Montview* Appraisal Award. [#120]. This court, however, also determined that Plaintiff had failed to allege sufficient facts to support their RICO and COCCA claims. [*Id.*]. Specifically, the FAC failed to contain adequate factual allegations necessary to establish two predicate acts of mail or wire fraud. [*Id.* at 35–38].

I. **Relevance to Fraudulent Concealment/Civil Conspiracy Claims**

With this court's Recommendation in mind,[3] based on a review of the Subpoena, this court agrees that the Subpoena seeks a wide swath of information that is not relevant to Church Mutual's claims for fraudulent concealment and civil conspiracy, and, therefore, should be quashed. To that end, there is no allegation by Church Mutual that Mr. Frankl or the Frankl Law Firm were and/or are implicit in the alleged fraudulent scheme involving the adjustment of the claim for Montview. [#49]. Mr. Frankl and the Frankl Law Firm are not alleged to have been involved in Mr. Coutu's urging of Montview to issue a written demand for appraisal. [*Id.*]. Nor does Plaintiff allege involvement by Mr. Frankl or the Frankl Law Firm in negotiating or facilitating any business relationship between Mr. Coutu, Power Adjusters, Mr. Bensusan, and/or Atlantis. [*Id.*]. And based on this court's review of the docket from the related litigation of *Montview Boulevard Presbyterian Church v. Church Mutual Ins. Co.*, Case No. 14-cv-1635-MSK-KMT, neither Mr. Frankl nor the Frankl Law Firm represented in that action either Montview or any of the named Defendants in this matter, including Mr. Kezer. Plaintiff has simply failed to establish the necessary nexus under Rule 26(b)(1) to persuade this court that the

---

[3] This court acknowledges that the time for the Parties to file objections to the Recommendation has yet to lapse, and the presiding judge, the Honorable Raymond P. Moore, may decline to adopt the Recommendation. Nevertheless, this court finds that the best course of action in managing discovery at this juncture is to proceed by accounting for the Recommendation.

9

Subpoena as served is relevant to its claims for fraudulent concealment or civil conspiracy. *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n. 20 (D. Kan. Feb. 22, 2007) (holding that when the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of discovery bears the burden of making an initial, rebuttable showing of relevance).

## II. Plaintiff Cannot Use Discovery to Bolster Its RICO/COCCA Claims

In addition, Plaintiff cannot use discovery in an attempt to bolster and/or amend its RICO and COCCA claims. Case law is clear that judges are trusted to prevent discovery from becoming "fishing expeditions or an undirected rummaging for evidence of some unknown wrongdoing." *See Cuomo v. The Clearing House Ass'n*, *L.L.C.*, 557 U.S. 519, 531 (2009). Even assuming that Judge Moore declines to adopt the Recommendation and permits Plaintiff's RICO and COCCA claims as currently pled to go forward, the FAC still fails to allege facts that would allow this court to determine that the Subpoena as served is proportionate to the claims. The FAC provides several bad faith lawsuits where Messrs. Coutu and Bensusan acted as the public adjuster and appraiser, respectively, but never mentions Mr. Frankl's or the Frankl Law Firm's connection to those bad faith lawsuits. Nor does the FAC allege that Mr. Frankl or the Frankl Law Firm was otherwise complicit in facilitating the business enterprise(s) involving Defendants. While this court understands the nature of Church Mutual's request, the fact remains that there is no allegation as to any involvement by Mr. Frankl and the Frankl Law Firm in those underlying suits. Moreover, this court made clear in its Recommendation that it was insufficient to infer the necessary predicate acts under Plaintiff's RICO and COCCA claims. Accordingly, Plaintiff has failed to persuade this court how, particularly given the pending Recommendation, the information sought is relevant to its remaining claims.

**III.    The Subpoena as Written is Overbroad**

Finally, even if this court were to find that the Subpoena topics were relevant to Plaintiff's claims, it would still conclude that the Subpoena, as served, contains topics that are overly broad and implicate the production of numerous documents.[4]  Though Plaintiff seeks information relating to the named Defendants and Mr. Kezer, all of whom were involved in the Montview appraisal, the information sought by the Subpoena well exceeds the bounds of its remaining claims—fraudulent concealment and civil conspiracy arising from the *Montview* appraisal or this court's Order on the Motion to Stay.  *Cf.* [#103 at 8 ("Plaintiff must defer seeking discovery related to any other insurance claim, and Defendants need not produce any discovery regarding the adjustment of other insurance claims, **except as to information that reflects the relationship and financial arrangements between the Defendants**.")].

For instance, the Subpoena seeks production of "all communications, including but not limited to, written correspondence and email, between Philip Coutu, on the one hand, and Garret Kurtt or his company Ecoblast, LLC on the other, related to any demand for appraisal, any nomination of an appraiser or umpire, and/or any appraisal award," without any indication from the Subpoena or the FAC how Mr. Kurtt or his company Ecoblast, LLC are involved with the claims asserted.  While Plaintiff argues in its response that there is a "second category of cases

---

[4] Mr. Frankl and the Frankl Law Firm and Defendants also invoke the attorney-client privilege and the work product doctrine as barriers to production. *See e.g.* [#91 at 5; #92 at 3].  But as acknowledged by Frankl's Motion to Quash, the topics appear to be crafted to avoid privileged communications. [#91 at 5; #91-1].  Indeed, underlying non-privileged communications may be discoverable even when attorney advice as to the communication is privileged. *See Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 97 (2013) (explaining, "the [attorney-client] privilege [] does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered." (internal quotation marks and citations omitted)).  And this court has been provided no information, other than bald assertions, to determine whether the privileged communications are of such volume that a privilege log would be unreasonable – which are insufficient under Rule 45(e)(2).  Nevertheless, because this court finds, as a preliminary matter, that the Subpoenas are not proportionate to the claims asserted by Plaintiff, it does not resolve any issues related to privilege.

that is relevant to prove the breadth and depth of the relationship between and among Defendants," naming *Ecoblast LLC v. Rooftop Restoration*, (El Paso County, 14CV31781) [#111 at 6], this court does not find the description of this "second category of cases" illustrative. Similarly, it seeks the production of "all contracts, including but not limited to engagement letters, fee agreements, contingent fee agreements," between Mr. Frankl and the Frankl Law Firm with not only the named Defendants, but also numerous additional "Affiliated Coutu Entities," without regard to the subject matter of the engagement or whether such engagements even involve any insurance claims. [#91-1 at 8]. It also seeks "all correspondence disclosing any current or previous relationship between John Kezer and/or Jones & Keller, P.C. on one hand, and a party to any agreement to appraise, a party to any appraisal proceeding, their counsel or representatives, including licensed public adjusters, a witness, another appraiser, or the umpire on the other hand." [*Id.* at 10]. The mere fact that Mr. Coutu and Mr. Bensusan may have been involved in a single insurance claim, without more, does not necessarily throw open all of their contracts, correspondence, and insurance claims.

This court's conclusion does not foreclose the issuance of a narrower third-party subpoena in this matter, once the issues related to the scope of the claims as raised by the Recommendation are resolved and the Subpoena topics are more narrowly-tailored. However, this court is disinclined to provide a discussion as to each of the enumerated topics' broadness in an attempt to narrow the Subpoena. *See Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (4th Cir. 1994) ("Though modification of an overbroad subpoena might be preferable to quashing, courts are not required to use that lesser remedy first."). Indeed, Plaintiff is and has been represented by more than able counsel since the inception of this action. *See United States v. Davis*, 622 F. App'x. 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a

litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

Finally, while this court agrees that the Subpoena should be quashed, Mr. Frankl and the Frankl Law Firm's request for fees already incurred in attempting to respond to the Subpoena is DENIED. None of the Parties or non-parties involved in this Subpoena had the benefit of this court's ruling on the Motions to Dismiss prior to the issuance of the Subpoena and, thus, this court could not provide meaningful guidance as to the Subpoena topics. In addition, this court notes that even Mr. Frankl and the Frankl Law Firm acknowledge that, at least on their face, the topics are crafted to avoid privileged documents. *See Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009) (explaining, "[t]he mere fact, however, that a disputed subpoena is ultimately deemed unwarranted does not, standing alone, demand the imposition of sanctions[,]" and noting that fees may be warranted where the subpoena is issued in bad faith). Accordingly, this court concludes that costs and fees are not warranted at this juncture.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Interested Party Keith Frankl's Motion to Quash Subpoena to Non-Party Keith Frankl and/or the Frankl Law Firm, P.C. [#91] is **GRANTED IN PART and DENIED IN PART**; and

(2) Defendants' Motion to Quash Pursuant to Fed.R.Civ.P. 45(d)(3)(B) of Subpoena Duces Tecum to the Frankl Law Firm and For Protective Order [#92] is **GRANTED**.

DATED: September 25, 2017
BY THE COURT:

s/Nina Y. Wang_____
United States Magistrate Judge