**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00209-RM-NYW

CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

      Plaintiff,

v.

PHILLIP MARSHALL COUTU, an individual,
POWER ADJUSTERS, INC., a Colorado corporation,
JUDAH LEON BENSUSAN, an individual, and
ATLANTIS CLAIMS SERVICES, LLC, a Florida limited liability company,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter is before the court on Plaintiff Church Mutual Insurance Company's ("Plaintiff" or "Church Mutual") Motion for Leave to File Second Amended Complaint ("Motion" or "Motion to Amend"), filed October 6, 2017. [#128]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated March 30, 2017 [#33], and the memorandum dated October 10, 2017 [#130]. This court has carefully reviewed the Motion and associated briefing, the entire case file, and applicable law, and concludes that oral argument will not materially assist in the resolution of this matter. For the reasons stated herein, this court respectfully **RECOMMENDS** that the Motion to Amend be **GRANTED**.

## BACKGROUND

      This court has discussed the background of this case in its prior Recommendation and Orders, *see e.g.*, [#103; #120], and does so here only as it pertains to the instant Motion. Plaintiff initiated this action by filing its Complaint in this District on January 23, 2017. [#1]. Plaintiff's

Complaint alleged two claims against Defendants Phillip Marshall Coutu, Power Adjusters, Inc. ("Power Adjusters"), Judah Leon Bensusan, and Atlantis Claims Services, LLC ("Atlantis Claims") (collectively, "Defendants"): (1) civil conspiracy and (2) fraudulent concealment. [*Id.*]. The events giving rise to Plaintiff's Complaint involved an appraisal award issued to one of Church Mutual's policyholders for repairs completed to the policyholder's roof following a hailstorm. [*Id.*]. Plaintiff alleged that Defendants conspired to unlawfully inflate the cost of repairs needed for their own economic gains, as each had a stake in a higher appraisal award. [*Id.*].

Following several extensions of time to answer or otherwise respond to Plaintiff's Complaint, and pursuant to this court's Order [#46], Plaintiff filed its First Amended Complaint ("FAC") on April 25, 2017, and asserted the following claims: (1) civil conspiracy against all Defendants ("Claim I"); (2) fraudulent concealment against all Defendants ("Claim II"); (3) federal civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against all Defendants ("Claim III"); (4) federal civil RICO conspiracy against Messrs. Coutu and Bensusan ("Claim IV"); and (5) state civil violations of the Colorado Organized Crime Control Act ("COCCA") against Messrs. Coutu and Bensusan ("Claim V"). [#49]. On June 5, 2017, Defendants filed a Joint Motion to Dismiss all five of Church Mutual's claims [#65], which the undersigned recommended granting in part and denying in part [#120]. Relevant here, this court recommended dismissing Plaintiff's RICO and COCCA claims (Claims III–V) for failure to state a claim, because Plaintiff's those claims suffered from a similar deficiency: the failure to plead a pattern of racketeering activity with specificity, a necessary component to any RICO or COCCA violation as well as to any RICO or COCCA conspiracy claim. *See* [*id.*]. Also on June 5, 2017, Defendants filed a Motion to Stay discovery [#64], which the undersigned

denied, and then directed the Parties to limit discovery to the "Montview matter and the relationships between the four Defendants." *See* [#103 at 7].

Per the Scheduling Order, this court set the deadline for joinder of parties and amendment of pleadings as October 6, 2017. *See* [#76 at 29]. Plaintiff filed the instant Motion to Amend on October 6, 2017. [#128]. Plaintiff requests leave to file its proposed Second Amended Complaint ("SAC") that includes a request for exemplary damages pursuant to Colo. Rev. Stat. § 13-21-102 and "addresses alleged deficiencies in Church Mutual's RICO and COCCA claims by providing more particularity with respect to the multiple predicate acts of wire and mail fraud, thereby satisfying the 'pattern' element of Church Mutual's RICO and COCCA claims." [*Id.* at 1–2]. Defendants have filed their Response and Plaintiff its Reply. [#135; #136]. The Motion to Amend is now ripe for recommendation.

## LEGAL STANDARDS

### I. Rule 15(a)(2)

Rule 15(a) governs motions to amend when the moving party seeks leave to amend its pleadings on or before the deadline for joinder of parties and amendment of pleadings set by the Scheduling Order. *See Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (explaining that the movant need not demonstrate good cause under Rule 16(b) under such circumstances). Rule 15(a)(2) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *accord Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (observing that a court may dismiss a motion to amend if amendment is futile, *i.e.*, the amended complaint would be subject to dismissal for any reason).

Whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).

## II.      Exemplary Damages, Colo. Rev. Stat. § 13-21-102

Colo. Rev. Stat. § 13-21-102 governs proposed amendments concerning exemplary damages. Pursuant to section 13-21-102(1.5)(a), a plaintiff cannot move for exemplary damages in the initial pleading, and may seek to amend the pleading to add a claim for exemplary damages "only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure," and if he or she establishes prima facie proof of a triable issue. In finding that there is no direct conflict between this statute and the Federal Rules of Civil Procedure and that application of the statute would not necessarily result in forum shopping or the inequitable administration of the law, courts in this District have held that section 13-21-102, rather than Rules 15(a) or 16(b), control whether to permit the amendment of a claim for exemplary damages. *See Wollam v. Wright Medical Group, Inc.*, No. 1:10–cv–3104–DME–BNB, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012) (applying Colo. Rev. Stat. § 13-21-102 to motion to amend to add exemplary damages claim); *Witt v. Condominiums at the Boulders Ass'n,* No. 04–cv–02000–MSK–OES, 2006 WL 348086, at *7 (D. Colo. Feb. 13, 2006) (finding the court must give effect to Colorado statute in evaluating whether exemplary damages claim properly brought in diversity action). *See also American Economy Ins. Co. v. William Schoolcraft, M.D., P.C.*, No. 05–cv–01870–LTB–BNB, 2007 WL 160951, at *2 (D. Colo. Jan. 17, 2007) (applying *Jones v. Krautheim,* 208 F. Supp. 2d 1173, 1179 (D. Colo. 2002)). Even with the application of section 13-21-102, however, the court may deny a motion to amend to add exemplary damages because of delay, bad faith, undue expense, or other demonstrable prejudice. *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (citation omitted).

Section 13-21-102 provides that an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13–21–102(1)(a). The purpose of the award of punitive damages is to punish the wrongdoer, not compensate for injuries. *See Lira v. Shelter Insurance Co.*, 913 P.2d 514, 517 (Colo. 1996). A "finding that the elements of fraud [are] established also establishe[s] the 'circumstances of fraud' required for punitive damages." *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 F.2d 1380, 1386 (Colo. App. 1990) (upholding award of exemplary damages where the plaintiff prevailed on her fraudulent concealment claim at trial).

As to the requirement of a prima facie showing, "[p]rima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449 (citation omitted). Such proof is established by "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Parties may offer this proof in the form of discovery and by evidentiary means. *Id.* "The question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Id.* (citation omitted). In reviewing the Motion to Amend, this court considers only the "preliminary question" of whether Plaintiff has made a prima facie showing that the injury complained of is attended by "circumstances of fraud," not whether it will ultimately prevail. *American Economy Ins. Co.*, 2007 WL 160951, at *4.

## ANALYSIS

### I.    Exemplary Damages

In the Motion, Plaintiff requests leave to assert a claim for exemplary damages based on Messrs. Coutu and Bensusan's failure to disclose their business relationship and financial interest

in the underlying Montview appraisal award. [#128 at 3–4; #136 at 3]. Because the Parties have exchanged initial disclosures, Church Mutual contends that it can now proffer sufficient evidence to demonstrate a prima facie showing of "circumstances of fraud" under Colo. Rev. Stat. § 13-21-102(1.5)(a), such that a claim for exemplary damages is appropriate.

To prove a fraudulent concealment claim Church Mutual must demonstrate: (1) Defendants concealed a material fact that in equity and good conscience should have been disclosed; (2) Defendants knew they were concealing such a fact; (3) Plaintiff was ignorant to the concealed fact; (4) Defendants intended Plaintiff to act upon the concealed fact; and (5) Plaintiff acted on the concealed fact to its detriment. *See Wood v. Houghton Mifflin Harcourt Publ'g. Co.*, 589 F. Supp. 2d 1230, 1254 (D. Colo. 2008) (applying Colorado law); *Baker v. Wood, Ris & Hames, Prof'l Corp.*, 364 P.3d 872, 883 (Colo. 2016). "A defendant has a duty to disclose to a plaintiff with whom he or she deals material facts that in equity or good conscience should be disclosed." *See Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) (internal quotation marks and citation omitted). And, as mentioned, a showing of fraudulent concealment suffices to satisfy the "circumstances of fraud" language in Colo. Rev. Stat. § 13-21-102(1)(a). *See Berger*, 795 F.2d at 1386.

In support of its Motion to Amend Church Mutual argues that Mr. Coutu admits in his responses to Plaintiff's First Set of Requests for Admissions that he and Mr. Bensusan had an extensive financial and business relationship that included payment of Mr. Bensusan's rent and giving Mr. Bensusan check-writing authority, that Mr. Coutu and his companies had an attorney-client relationship with Mr. Kezer (the appraisal umpire in the Montview matter), and that Mr. Coutu never disclosed this information to Church Mutual before or during the Montview appraisal process. *See* [#129]; *see also* [#128-6 (listing Mr. Bensusan as a Manager of Power

Adjusters); #128-7 (designating Mr. Bensusan as General Manager of one of Mr. Coutu's companies)]. Moreover, Plaintiff avers that Mr. Bensusan, by invoking the appraisal clause of the Montview insurance policy [#128-4], held himself out as an impartial appraiser on Montview's behalf. *See* [#128 at 4–5; #128-3]. According to Plaintiff, Mr. Bensusan was not an impartial appraiser as he had a direct financial interest in the outcome of the Montview appraisal. *See* [#128-5 at 2]. Church Mutual continues that, had its appraiser known of Mr. Bensusan's financial interest in the appraisal award or Mr. Coutu's attorney-client relationship with the umpire, Church Mutual's appraiser would not have signed the appraisal award and would have advised Plaintiff of his "concerns for the legitimacy of the appraisal process." *See* [#128-8 at ¶¶ 16, 24, 31–34, 35].

Defendants do not refute this evidence, nor do they argue that Plaintiff fails to satisfy the requirements of Colo. Rev. Stat. § 13-21-102(1.5)(a). Instead, Defendants note, in passing, their current objections to the undersigned's Recommendation on the issue of duty to disclose, *see* [#135 at 2 n.1], and argue, at length, that Church Mutual's appraiser, Mr. McConnell, was not impartial as required by the Montview policy, *see* [*id.* at 2–5]. But as Defendants recognize, these arguments are better suited for "trial and/or [] Motion." [*Id.* at 4]. In addition, the evidence must be viewed in the light most favorable to the party claiming exemplary damages. *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005); *Eurpac Service Inc. v. Republic Acceptance Corp.*, 37 P.3d 447, 452 (Colo. App. 2000).

As articulated in its Recommendation on Defendants' Motion to Dismiss, this court concluded that Defendants owed Plaintiff a duty to disclose their extensive business relationship and direct pecuniary interest in the Montview appraisal award and that the FAC stated a plausible fraudulent concealment claim based on the allegations that Defendants did not disclose

this material information. *See* [#120 at 10–25]. Now, based on review of the Motion to Amend and attached exhibits, this court concludes that Church Mutual has demonstrated a prima facie case of "circumstances of fraud" for purposes of amending its claims to seek exemplary damages. *See Am. Econ. Ins. Co.*, 2007 WL 160951, at *4. It is therefore respectfully RECOMMENDED that Plaintiff's Motion to Amend be GRANTED for purposes of adding a claim for exemplary damages.

## II.    Amendment of RICO and COCCA Claims

Church Mutual also seeks leave to amend Claims III–V to cure the deficiencies identified in this court's Recommendation [#120] and to assert Claims IV and V against all Defendants. *See* [#128 at 6; #136 at 8]. Specifically, Church Mutual states the SAC identifies six (6) predicate acts of mail or wire fraud (*i.e.*, Defendants employing a similar fraudulent scheme to receive corrupt appraisal awards and damages from subsequent bad-faith lawsuits), pleads these predicate acts with particularity under Rule 9(b) of the Federal Rules of Civil Procedure, and establishes a pattern of racketeering activity. *See* [#128 at 6–10, 12–13; #136 at 8–11]. Church Mutual also argues its Motion to Amend is timely, amendment will not prejudice Defendants, and its amendments are not futile. *See* [#128 at 11–15; #136 at 4–11].

Defendants first argue that Plaintiff's Motion to Amend is untimely, because the information contained in the SAC was available to Church Mutual prior to filings its Complaint and FAC. [#135 at 7, 9]. Further, Defendants conferred with Plaintiff as to their intent to file a Motion to Dismiss the FAC based on a lack of a duty to disclose and the failure to adequately plead RICO or COCCA claims; yet, Plaintiff did not seek leave to amend at that time and decided to rest on the adequacy of its FAC. [*Id.* at 7]. Thus, to allow amendment now, after this

case has been pending for 10 months and the Defendants have expended countless resources, would be "highly prejudicial to Defendants." [*Id.* at 9–10].

While undue delay may justify the denial of a motion to amend, *see United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009), Church Mutual filed its Motion to Amend on the deadline set by this court for joinder of parties and amendment of pleadings, *see Smith v. Sprint/United Mgmt. Co.*, No. 15-cv-00550-WJM-KMT, 2015 WL 5444298, at *1 (D. Colo. Sept. 16, 2015) (holding as timely a motion to amend filed within the deadline set by the court). This court is also not convinced that Church Mutual knew or should have known of the facts upon which the proposed amendments are based such that its Motion to Amend, though filed on the deadline set by this court, is nonetheless untimely. *Cf. Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (affirming the denial of leave to amend where the plaintiff sought leave to amend "approximately a year and a half after the complaint was filed, 9 months after partial summary judgment was entered and only a few months before the case was scheduled for trial on the sole remaining issue of good faith.").

This court further concludes that allowing Church Mutual to amend at this juncture will not unduly prejudice Defendants. Despite Defendants' assertions that Church Mutual asks this court to sit as a "Super-Court" by re-opening all of the previous bad-faith lawsuits identified by the SAC and gathering discovery and evidence regarding the same, *see* [#135 at 13–15], the fact remains that Plaintiff's proposed amendments do not "arise out of a subject matter different from what was set forth in the [amended] complaint [or] raise significant new factual issues." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006). And, as before, this court will address specific discovery issues as they may arise, and finds that the potential for large,

complicated discovery is an inappropriate ground for denying amendment. Moreover, though mindful of the age of this case and the amount of resources expended by both Parties, "expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009).

Defendants also oppose amendment to Claims III–V on futility grounds. *See* [#135 at 10]. Defendants again assert Church Mutual has failed to plead a pattern of racketeering activity with particularity, and argue that Plaintiff's RICO and COCCA claims fail for the reasons offered in Defendants' Motion to Dismiss [#65] that this court did not address in its recommendation: failure to plead an enterprise and lack of RICO standing. *See* [*id.* at 10, 13]; *see also* [#65 at 31–33]. While futility arguments may, at times, "place the cart before the horse," No. 07-cv-01145-DME-KMT, *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, 2008 WL 2520423, at *4 (D. Colo. Jun. 20, 2008), the interests of judicial economy counsel in favor of a thorough futility analysis of the proposed amendments to Claims III–V given the procedural history of this case.[1] *Cf. Hernandez v. Valley View Hosp. Ass'n*, No. 10-cv-00455-REB-MJW, 2010 WL 5157310, at *1 n.3 (D. Colo. Dec. 14, 2010) (disavowing a broad application of the "cart before the horse" reasoning because doing so "delays the near-inevitable motion to dismiss and, concomitantly, creates potentially unnecessary burdens on the litigants and the court.").

A.      Futility

Courts, in their discretion, may deny leave to amend upon a determination that such amendment would be futile. *See Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993). "'A proposed amendment is futile if the complaint, as amended, would be

---

[1] This court notes that Defendants do not explicitly incorporate by reference their RICO standing and enterprise arguments from their Motion to Dismiss [#65] into their Response to the Motion to Amend, *see* Fed. R. Civ. P. 10(c), nor do they reassert the substance of such arguments. But given the age of this case and the outstanding Recommendation on the Motion to Dismiss [#120], this court addresses these arguments herein for the sake of efficiency.

subject to dismissal.'" *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *Bradley v. Val–Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). "If a party opposes a motion to amend [. . .] on the grounds of futility, the court applies the same standard to its determination of the motion that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *JDK LLC v. Hodge*, No. 15-cv-00494-NYW, 2015 WL 5766466, at *2 (D. Colo. Oct. 2, 2015) (citation and internal quotation marks omitted) (ellipsis added). This analysis turns in no way on the merits of Church Mutual's claims, and focuses solely on the adequacy of the pleaded factual allegations in the SAC.

This court now turns to the proposed amendments to Plaintiff's RICO and COCCA claims, Claims III–V. "A RICO violation requires: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (citation and internal quotation marks omitted). Relatedly, "[t]o properly allege a COCCA claim, Plaintiff[] must plead that [Defendants] plausibly participated in the affairs of an 'enterprise' through a pattern of two or more instances of racketeering activity." *Henson v. Bank of Am.*, 935 F. Supp. 2d 1128, 1136–37 (D. Colo. 2013). Because RICO and COCCA are similar, courts generally construe both according to similar principles. *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1076 (D. Colo. 2012); *accord Niemi v. Lasshofer*, 728 F.3d 1252, 1260 (10th Cir. 2013) (noting that Colorado courts look to federal RICO law for guidance when interpreting COCCA). For this reason, the subsequent discussion focuses on federal RICO law, but is equally applicable to Plaintiff's COCCA claim.

### i.        Pattern of Racketeering Activity

The first contention Defendants raise to Church Mutual's RICO and COOCA claims is the failure to allege a pattern of racketeering activity, a crucial element of such claims. *See Deck*

*v. Engineered Laminates*, 349 F.3d 1253, 1256–57 (10th Cir. 2003). RICO defines "'racketeering activity' to encompass dozens of state and federal offenses, known in RICO parlance as predicates. These predicates include any act 'indictable' under specified federal statutes,'" including mail and wire fraud, 18 U.S.C. §§ 1341, 1343. *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017) (quoting *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016)). A "pattern of racketeering activity" requires at least two predicate acts. *See Gillmor v. Thomas*, 490 F.3d 791, 797 (10th Cir. 2007). This requires demonstrating a relationship between the predicate acts and a threat of continuing activity—"the pattern element is not satisfied by a showing of relatedness alone." *Duran v. Carris*, 238 F.3d 1268, 1271 (10th Cir. 2001); *but cf. People v. Chaussee*, 880 P.2d 749, 753, 758 (Colo. 1994) (holding "pattern of racketeering" under COCCA does not require proving continuity but, rather, requires only a showing of two predicate acts that are related to the conduct of the enterprise). Further, Church Mutual must plead its mail/wire fraud predicate acts with particularity under Rule 9(b) of the Federal Rules of Civil Procedure, meaning its allegations "must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof. [. . .] [And] must also identify the purpose of the mailing [or use of the wires] within the defendant[s'] fraudulent scheme." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (internal brackets, citations, and quotation marks omitted); *cf. L-3 Commc'ns Corp.*, 863 F. Supp. 2d at 1076 (stating that COCCA claims predicated on fraud must be pleaded with particularity).

Defendants contend the SAC fails to allege a pattern of racketeering activity with particularity. [#135 at 10]. This is because the SAC merely expounds on the six (6)[2] bad faith lawsuits identified in the FAC with the filing dates of said lawsuits and "other details about each case" that are public record. [*Id.*]. But, according to Defendants, the SAC still relies on "conclusory and speculative allegations" concerning the circumstances of those prior lawsuits, nothing in the SAC identifies the requisite predicate act of mail or wire fraud associated with those lawsuits, and nothing in the SAC rises to the level of criminal conduct. [*Id.* at 10–13]. Based on a review of the SAC, this court respectfully disagrees.

To start, in its Recommendation on Defendants' Motion to Dismiss, this court concluded that Plaintiff had alleged at least one instance of mail and/or wire fraud with particularity, *i.e.*, the nomination of Mr. Bensusan as Montview's "impartial" appraiser through interstate wire, which then led to an inflated appraisal award and subsequent bad-faith lawsuit to Plaintiff's detriment. *See* [#120 at 34–35 (concluding Church Mutual identified the "who, what, when, where, and how of the alleged fraud," despite the appraisal demand, itself, not being fraudulent)]. The undersigned, however, reached a different conclusion as to Church Mutual's allegations of a pattern of racketeering activity, finding such allegations "invite[d] this court to infer that in each of these [additional bad-faith lawsuits], Defendants committed mail or wire fraud, which [was] insufficient." [*Id.* at 36]. This court finds otherwise based on the proposed allegations in the SAC.

Rather than listing the additional bad-faith lawsuits as before, the SAC now provides factual allegations regarding the circumstances of such suits and Defendants' underlying conduct. *See* [#128-1]. For instance, in each of these bad-faith lawsuits Mr. Coutu or his

---

[2] The SAC contains a seventh lawsuit involving Defendants or their agents that is not related to the six (6) bad-faith lawsuits. This court does not consider that seventh suit for the purposes of the instant Motion.

agent(s) served as the insured's public adjuster, who would then invoke the insurance policy's appraisal demand provision that contained similar "competent and impartial appraiser" language; Mr. Coutu or his agent(s) would then nominate and/or appoint Mr. Bensusan as the insured's appraiser; Messrs. Coutu and Bensusan or their agent(s) would then send the insurer notice of the appraisal demand and Mr. Bensusan's nomination as appraiser via email or United States Mail; an ensuing dispute would arise between Mr. Bensusan's appraisal and the insurer's appraisal, with the discrepancies being in the hundreds of thousands on several occasions; and, ultimately, an attorney associated with Messrs. Coutu and Bensusan would represent the insured in a bad-faith lawsuit stemming from the apparent low-ball appraisals tendered by the insurer when compared to Mr. Bensusan's high-ball appraisals. *See* [*id.* at ¶¶ 113–250]. Plaintiff identifies each insurer by name and the dates pertinent to these lawsuits, and alleges that in all instances Messrs. Coutu and Bensusan did not disclose their extensive financial and business relationships, which, in some cases, was discovered during the course of the bad-faith lawsuit. [*Id.*]. Aside from minute nuances with each lawsuit, the general scheme remained largely the same—Mr. Coutu served as public adjuster, Mr. Coutu then nominated/appointed Mr. Bensusan as the insured's "impartial" appraiser, a dispute arose between Mr. Bensusan's appraisal and the insurer's appraisal, and a bad-faith lawsuit against the insurer followed. According to the SAC, this scheme occurred over several years—as early as 2011 and as recently as 2016. *See* [#128-1 at ¶¶ 113–250]. Despite Defendants' avowal that "Mr. Bensusan has moved to Florida and no longer serves as an appraiser," [#135 at 13], a "series of related predicates extending over a substantial period of time" *or* "a clear threat of future criminal conduct related to past criminal conduct" is sufficient to satisfy the pattern of racketeering element. *See SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990).

Moreover, Defendants' arguments that the SAC contains only conclusory allegations of mail or wire fraud, that the SAC does not identify *who* sent the appraisal demands, and that Defendants' conduct is not criminal are equally unavailing. *See* [#135 at 10–11]. As explained in the Recommendation on Defendants' Motion to Dismiss [#120], "deceitful concealment of material facts *may* constitute actual fraud." *United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir. 2008) (emphasis added); *cf. Emery v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1346–47 (7th Cir. 1995) (noting the mail fraud statute punishes "*deliberate* fraud" as in making a misleading statement known to be false or half true for purposes of obtaining something of monetizable value from the person you make the statement to, despite no duty to disclose that information). And perpetrating that fraud through use of the United States Mail or interstate wires is an indictable offense that RICO is intended to punish. *See Safe Sts. All.*, 859 F.3d at 882. Indeed, a perpetrator may be guilty of mail or wire fraud without personally effecting the mailing or wiring if she "does an act with knowledge that the use of mail [or wire] will follow in the ordinary course of business, or where such use can reasonably be foreseen," though not actually intended. *See United States v. Washington*, 634 F.3d 1180, 1183–84 (10th Cir. 2011).

The SAC contains specific allegations as to how and when the nomination of Mr. Bensusan and the appraisal demands were sent to the insurers, and it is clear the role this played in Defendants' overall scheme; thus, it cannot be said that such allegations are conclusory and speculative or invite the court to infer mail/wire fraud under the circumstances. *See United States v. Tavares*, 844 F.3d 46, 59 (1st Cir. 2016) (explaining, "[t]he mailing requirement is interpreted broadly . . . and the use of the mails need not be an essential element of the scheme . . . . Rather, the charged mailing need only be *incident* to an essential part of the scheme." (internal citations and quotation marks omitted) (ellipses and emphasis added)). Accordingly, this court

concludes that the SAC adequately pleads a pattern of racketeering activity. *See Allstate Ins. Co. v. Tacoma Therapy, Inc.*, 204 F, Supp. 3d 1181, 1187 (W.D. Wash. 2016) (holding Allstate pleaded with particularity a RICO claim based on predicate acts of mail and wire fraud where the defendants sent "fraudulent information to Allstate designed to enhance the value of the underlying claimants' cases for purposes of supporting those claimants' artificially enhanced settlement demand."); *accord Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, 88 F. Supp. 3d 985, 998–1002 (D. Minn. 2015) (holding Liberty Mutual pleaded with particularity a RICO claim based on predicate acts of mail and wire fraud where the defendant knowingly filed false insurance claims).

### ii.    Enterprise

RICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  This broad definition encompasses "any union or group of individuals associated in fact" with:  (1) a "purpose," (2) a "relationship among those associated with the enterprise," and (3) the "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009) (citation and internal quotation marks omitted); *cf. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Kozeny*, 115 F. Supp. 2d 1210, 1227 (D. Colo. 2000) ("A COCCA enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." (citations and internal quotation marks omitted)).  Plaintiff alleges Messrs. "Coutu and Bensusan, with their companies, Power Adjusters and Atlantis Claims, associated together among themselves and with others" to form an association-in-fact enterprise with the purpose and longevity to "defraud[] insurance

companies." [#128-1 at ¶¶ 299–300]. In the alternative, Plaintiff alleges that Power Adjusters and Atlantis Claims, as business entities, "are themselves[] enterprises for purposes of RICO." [*Id.* at ¶ 301].

In their Motion to Dismiss, Defendants contend that Church Mutual failed to allege a distinction between Defendants as "persons" and Defendants as the "enterprise" as required by RICO. [#65 at 30–31]. Nor, according to Defendants, had Plaintiff "alleged with any particularity the 'organization' by name or with any specificity regarding its existence." [*Id.* at 31]. For the following reasons, this court respectfully disagrees.

"It is well-settled in this circuit, as in most others, that for purposes of 18 U.S.C. § 1962(c), the defendant 'person' must be an entity distinct from the alleged 'enterprise.'" *Brannon v. Boatmen's First Nat. Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998); *see id.* at 1149 (agreeing with proposition that a defendant corporation, acting through its subsidiaries, agents, or employees usually cannot be both the RICO "person" and RICO "enterprise"). That is, liability attaches upon a "showing that the defendants conduct or participate in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). But allegations of two separate legal entities joining together, in addition to several other entities or persons, to conduct racketeering activity can be sufficient to establish an association-in-fact enterprise. *See George v. Urban Settlement Servs.*, 833 F.3d 1242, 1250–51 (10th Cir. 2016).

The SAC alleges the RICO enterprise consisted of Messrs. Coutu and Bensusan, Power Adjusters, Atlantis Claims, and, on occasion, Garrett Kurtt—owner of Ecoblast, LLC and agent of Mr. Coutu—and Mr. Coutu's related business entities of Rooftop Roofing and Rooftop Restoration, Inc. [#128-1 at ¶ 300]. The SAC alleges that the enterprise's purpose was to

defraud insurance companies, and details the involvement of each alleged enterprise member in that general scheme, including, but not limited to, searching for potential roofing projects through which Mr. Coutu or his companies and agents would be hired as public adjuster, nominating Mr. Bensusan as the insured's "impartial appraiser, and then encouraging the insureds to initiate bad-faith lawsuits against the insurers based on the dispute between Mr. Bensusan's appraisal and the insurers' appraisals. *See* [*id.* ¶¶ 13–15, 103–271, 305–306, 308]; *cf. BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (explaining that participation does not necessarily mean having a formal position within or significant control of the enterprise, but "*some* part in directing the enterprise's affairs is required." (citation and quotation marks omitted)). The SAC also contains sufficient allegations as to the relationship among those associated with the enterprise, *see, e.g.*, [*id.* at ¶¶ 9–15, 67–76, 103–271, 305–306]; *see also* [#129], and that this conduct occurred over several years, *see, e.g.*, [#128-1 at ¶¶ 103–271, 309].

Based on the foregoing, this court concludes that the SAC plausibly alleges an association-in-fact enterprise notwithstanding Defendants' assertion that Plaintiff "has not alleged with any particularity the 'organization' by name or with any specificity regarding its existence." *See United States v. Hutchinson*, 573 F.3d 1011, 1021 (10th Cir. 2009) ("[A]n an association-in-fact enterprise need have no formal hierarchy or means for decision-making, and no purpose or economic significance beyond or independent of the group's pattern of racketeering activity."). Nor is it fatal that Plaintiff pleads an alternative theory of enterprise, as the SAC adequately pleads an association-in-fact enterprise. *See Safe Sts. All.*, 859 F.3d at 883 ("[T]he Reillys' alternative enterprise theories do not undermine their well-supported allegations that the Marijuana Growers are each participating in a distinct, larger, association-in-fact

enterprise."). This court thus considers Defendants' final contention that Plaintiff fails to allege RICO standing.

### iii.        RICO Standing

Lastly, for Church Mutual to maintain a viable RICO claim its injuries must be proximately caused by the RICO violation. *See Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010); *but cf. Floyd v. Coors Brewing Co.*, 952 P.2d 797, 803 (Colo. App. 1997) (explaining that a plaintiff need only demonstrate "one or more injuries to someone [that] resulted from each of the predicate acts" to have COCCA standing), *rev'd on other grounds Floyd v. Coors Brewing Co.*, 978 P.2d 663 (Colo. 1999). This may include economic injury or loss, property damage, or adverse business effects, among others. *See Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002) (holding that allegations of reductions in development potential of the plaintiffs' properties sufficient for RICO standing).

In their Motion to Dismiss, Defendants' main point of contention as to RICO standing is that Plaintiff's allegations of paying an inflated appraisal award and unnecessary litigation fees is too speculative and indirect. [#65 at 32–33]. Though true that a plaintiff cannot recover for injuries "flowing merely from the misfortunes visited upon a third person by the defendant's acts," *Safe Sts. All.*, 859 F.3d at 890, Plaintiff appears to assert more here. Plaintiff alleges, because of the fraudulent scheme, it was required to pay an inflated appraisal award and had to incur fees and costs defending against a frivolous lawsuit. *See* [#128-1 at ¶¶ 34, 54–66, 313]. These out-of-pocket injuries are sufficient to allege an injury proximately caused by Defendants' RICO violation. *See Tacoma Therapy, Inc.*, 204 F. Supp. 3d at 1188 (holding the plaintiff suffered direct injury by paying out fraudulent or inflated insurance claims submitted by the defendants). Further, this court agrees with Plaintiff that the SAC does not seek damages

associated with the other bad-faith lawsuits Defendants were associated with but, rather, pleads such lawsuits to establish the necessary pattern of racketeering activity. *See* [#136 at 12]. Nor is this court convinced that Plaintiff's injuries are speculative simply because it is uncertain whether an appraiser different from Mr. Bensusan would have yielded a different appraisal award. *Cf. Deck*, 349 F.3d at 1259 (holding the plaintiff adequately alleged an injury proximately caused by the defendants' RICO violation where the defendants' mail and wire fraud caused the plaintiff "to enter into a settlement to which he would not otherwise have agreed."). In analyzing futility, this court focuses on the sufficiency of the pleading, not whether Plaintiff can ultimately prevail on the claim. Thus, this court concludes that the SAC adequately pleads RICO standing.

### iv.     Conspiracy

Defendants do not challenge Plaintiff's RICO and COCCA conspiracy claims in their Response to the Motion to Amend, and their Motion to Dismiss challenged these claims on grounds that both must fail without an underlying RICO or COCCA violation. *See* [#65 at 34]. But in the interests of judicial economy, this court briefly touches on those remaining claims, and concludes that each states a plausible claim for relief.

Both RICO and COCCA punish those that conspire to violate the statutes' substantive provisions. *See* 18 U.S.C. § 1962(d); Colo. Rev. Stat. § 18-17-104(4). To establish a RICO conspiracy, Church Mutual must allege that Defendants "adopt[ed] the goal of furthering or facilitating the criminal endeavor" even if they did not commit or agree to commit two or more predicate acts. *See United States v. Randall*, 661 F.3d 1291, 1297 (10th Cir. 2011) (citation and internal quotation marks omitted). Likewise, a COCCA conspiracy claim requires an agreement

to a pattern of racketeering activity and prohibited conduct, and requires more than mere association with conspirators. *See Sender v. Mann*, 423 F. Supp. 2d 1155, 1178 (D. Colo. 2006).

Based on the SAC's allegations recounted above, the SAC plausibly pleads RICO and COCCA conspiracy claims. The SAC adequately pleads the necessary elements for violations of both RICO and COCCA. It also details an intricate relationship between all Defendants—one that Plaintiff alleges was designed to perpetrate a scheme whereby Defendants agreed to conceal material facts in an effort to defraud insurance companies. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) ("A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy may be inferred from the conduct of the participants." (citations and internal quotation marks omitted)); *see also New Crawford Valley, Ltd. v. Benedict*, 877 P.2d 1363, 1373 (Colo. App. 1993) (holding that an allegation of a violation of Colo. Rev. Stat. § 18-17-104(3) "necessarily includes an allegation of an attempt to violate the pertinent subsection under § 18-17-104(4) [COCCA conspiracy].". This court finds such allegations sufficient to state plausible RICO and COCCA conspiracy claims.

## CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)    Plaintiff Church Mutual Insurance Company's Motion for Leave to File Second Amended Complaint [#128] be **GRANTED**.[3]

---

[3] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's

DATED:  February 12, 2018

BY THE COURT:

s/Nina Y. Wang_____
United States Magistrate Judge

---

proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).