# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Case No. 17-cv-00209-RM-NYW

CHURCH MUTUAL INSURANCE COMPANY.,

    Plaintiff,

v.

PHILLIP MARSHALL COUTU,
POWER ADJUSTERS, INC.,
JUDAH LEON BENSUSAN,
ATLANTIS CLAIMS SERVICES, LLC,

    Defendants.

___

## OPINION AND ORDER
___

Among other things, pending before the Court is the February 12, 2018 Report and Recommendation of U.S. Magistrate Judge Nina Y. Wang ("the R&R") (ECF No. 166), recommending that Plaintiff Church Mutual Insurance Company's ("plaintiff") Motion for Leave to File Second Amended Complaint ("the motion to amend") (ECF No. 128) be granted. Defendants, Phillip Marshall Coutu ("Coutu"), Power Adjusters, Inc., Judah Leon Bensusan ("Bensusan"), and Atlantis Claims Services, LLC (collectively, "defendants"), have filed Objections to the R&R (ECF No. 170), and plaintiff has filed a response (ECF No. 176).

**1.**     **The R&R**

The Magistrate Judge recommended that this Court grant the motion to amend. (ECF No. 166.) First, the Magistrate Judge found that plaintiff should be allowed to add a claim for

exemplary damages pursuant to Colo. Rev. Stat. § 13-21-102. (*Id*. at 5-8.) The Magistrate Judge found, *inter alia*, that plaintiff had alleged a plausible fraudulent concealment claim, including that defendants owed a duty to disclose their extensive business relationship and pecuniary interest in an arbitration award. (*Id*.) Second, the Magistrate Judge found that plaintiff should be allowed to amend its claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Colorado Organized Crime Control Act ("COCCA"). (*Id*. at 8-20.) The Magistrate Judge found that it would not be futile to amend those claims because plaintiff had alleged a plausible pattern of racketeering activity, RICO enterprise, and standing. (*Id*.)

**2.      Legal Standards**

    **a.      Review of a Report and Recommendation**

A party is entitled to a *de novo* review of those portions of the report and recommendation to which specific objection is made. *See* Fed.R.Civ.P. 72(b)(2), (3). "[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Furthermore, arguments not raised before the magistrate judge need not be considered by this Court. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

"When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72, Adv. Comm. Notes, subdivision (b) (1983); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate.").

b. **Amendment of Pleadings**

Pursuant to Fed.R.Civ.P. 15(a)(2) ("Rule 15"), a party may amend its pleading with the opposing party's consent or leave of court, with the court "freely giv[ing] leave when justice so requires." This standard means that leave to amend is not justified when there has been "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or the futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (quotation and internal quotation omitted).

3. **Defendants' Objections**

Defendants object on the following grounds. First, defendants object to allowing plaintiff to add a claim for exemplary damages because they did not owe a duty of disclosure to plaintiff, and thus, plaintiff fails to state a claim for fraudulent concealment or civil conspiracy. (ECF No. 170 at 7.) In doing so, defendants incorporate by reference a prior objection to a prior report and recommendation. (*Id*.)

Second, defendants argue that amendment of plaintiff's RICO and COCCA claims would be futile. (*Id*. at 9-20.) Defendants argue that plaintiff has failed to plead a pattern of racketeering activity with particularity. (*Id*. at 9-16.) Defendants further argue that plaintiff has failed to plead a RICO enterprise. (*Id*. at 16-18.) Defendants also argue that plaintiff lacks RICO standing. (*Id*. at 18-20.)

**4.     Discussion**

   **a.     Plaintiff's Claim for Exemplary Damages**

The underlying issue with respect to this claim is whether defendants owed plaintiff a duty of disclosure with respect to certain purportedly material information concerning defendants' business relationship and interest in an underlying appraisal award. In a prior report and recommendation (ECF No. 120), the Magistrate Judge found, for various reasons, that defendants did owe such a duty (*id*. at 11-25). Defendants objected to that earlier finding. (ECF No. 127.)

Although the Court does not rely upon all of the reasons the Magistrate Judge found were applicable to impose a duty of disclosure on defendants, including the Magistrate Judge's reliance on trade or custom, the Court finds that defendants were under a duty to disclose in this case.

The Court spends little time with whether Bensusan, as the supposed impartial appraiser in the underlying arbitration, had a duty to disclose. Although there is no Colorado case on point, the Court finds the Colorado Supreme Court's finding that appraisers have a duty of impartiality to be instructive. *See Providence Washington Ins. Co. v. Gulinson*, 215 P. 154, 155 (Colo. 1923) ("Appraisers are not referees, but their duty of impartiality is the same, and we do not think that can be attained by awards without either the presence of all or notice to each."). If a duty of impartiality is to have any meaning, then an appraiser must have a duty to disclose information that is directly related to whether or not that appraiser is impartial. Without such a duty of disclosure, the underlying duty of impartiality would have no teeth to secure its happening. Thus, although Bensusan is not a party to plaintiff's contract with its insured, in accepting the role of impartial appraiser, Bensusan accepted the *implied* duty of disclosing any evidence that directly related to whether or not he was impartial.

The issue with respect to Coutu is different because Coutu acted as the insured's public adjuster rather than an impartial appraiser. It appears that defendants accept the premise that Coutu, as the insured's public adjuster, acted as the insured's agent. (*See* ECF No. 127 at 6-7.)[1] According to defendants, case law establishes that, as an agent, Coutu could therefore not be liable to anyone other than his principal, here, the insured. (*Id*.) That is simply not so in Colorado. In Colorado, an agent may be held personally liable for torts or negligence he or she committed. *Galie v. RAM Associates Mgmt. Services, Inc.*, 757 P.2d 176, 177 (Colo. App. 1988); *Sanford v. Kobey Brothers Constr. Corp.*, 689 P.2d 724, 725 (Colo. App. 1984).

Defendants are simply wrong that Indiana and Colorado law are similar on this front. Notably, defendants cite no case to support its assertion in this regard. (*See* ECF No. 127 at 8-9.) Also, contrary to defendants' assertion, the court in *Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7 (Ind. Ct. App. 2010), did not find that an insured's agent did not owe an independent duty to the insurer. (*See* ECF No. 127 at 7.) There is simply no such finding. Instead, the court found that the agent was liable only to his principal, and, with respect to fraud, if the agent committed fraud, a defense could be raised by the insurer against the principal. *Hoffman*, 933 N.E.2d at 13.

The Court also rejects defendants' reliance upon *Lodholtz v. York Risk Services Group, Inc.*, 778 F.3d 635 (7th Cir. 2015). (*See* ECF No. 127 at 7-8.) Defendants assert that, in *Lodholtz*, the court surveyed cases across the United States and concluded that the majority do not view a claims adjuster as owing a duty of care to the insured. (*Id*. at 7.) Although the Court agrees that the

---

[1] Unless otherwise noted, the Court cites the page numbers assigned by the CM/ECF system in the top-right-hand-corner of all pleadings.

5

Seventh Circuit Court of Appeals surveyed cases from numerous other jurisdictions, that included a case from Colorado, which the Circuit characterized as showing courts in this State as being "more willing to hold that an insurance adjuster may be liable to the insured under alternative theories." *Lodholtz*, 778 F.3d at 641 n.11. The alternative theory in Colorado is when a third party has a financial incentive to deny an insured's claims or coerce a reduced settlement. *Id*. (citing *Riccatone v. Colo. Choice Health Plans*, 315 P.3d 203, 207 (Colo. App. 2013)). Thus, contrary to defendants' assertion, even if this Court was ignoring the approach adopted by a majority of courts, it is only doing so because courts in Colorado have chosen to do so.

Merely because an agent may be personally liable for his or her own tortious conduct, however, does not mean that Coutu had a duty to disclose in this case. The Court finds, however, under the alleged circumstances of this case, Coutu did. The Magistrate Judge relied, in part, upon the Restatement (Second) of Torts § 551(2)(b) ("§ 551(2)(b)") in finding that a duty to disclose existed. Defendants ague that the Magistrate Judge erred because they were not parties to a transaction for purposes of § 551(2)(b). (ECF No. 127 at 9-10.) The Court agrees with the Magistrate Judge.

Contrary to defendants' argument this is not merely about "having involvement in the [insurance] claim." (*See id*.) As the Magistrate Judge observed, Coutu is alleged to have urged the selection of Bensusan as an appraiser, and, in doing so, represented that Bensusan was impartial. (ECF No. 120 at 17.) The selection of Bensusan as an impartial appraiser was a key requirement for plaintiff's and its insured's appraisal clause to kick into gear. Although merely being hired as an adjuster may not have rendered Coutu subject to a duty to disclose, once Coutu became actively involved in facilitating the insured's purported compliance with the insurance policy, Coutu

6

effectively became a party to plaintiff's and the insured's business transaction. This is especially so in light of Bensusan's active involvement in the appraisal process, including nominating an umpire who was accepted as such even though the umpire had an alleged attorney-client relationship with Coutu.

The Court acknowledges the scant case law on this subject; specifically, whether a person or entity not named in an insurance policy or other contract can be considered a party to a business transaction related to such a policy or contract. Defendants certainly do not point this Court to any cases that would say no. (*See* ECF No. 127 at 9-10.) One Colorado case involving such a person—*Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105 (Colo. 1998)—does not foreclose a 'yes' answer. In that case, the Colorado Supreme Court dismissed a duty-to-disclose claim against an employee of a company to a sale transaction, not because the employee was not a party to the sale transaction, but because the plaintiff failed to show objective circumstances imposing a duty to disclose. *Id.* at 111-112. That may have simply been, though, due to the argument not being brought to the Colorado's Supreme Court's attention.

In any event, the Court finds that there is no reason, under the alleged circumstances of this case, why Coutu should not be considered a party to plaintiff and the insured's business transaction. A "party" is defined as "[s]omeone who takes part in a transaction." Black's Law Dictionary 1297 (10th ed. 2014). Although the dictionary gives as an example "a party to the contract," *id.*, the Court does not consider that to be the universe of parties who can take part in a transaction. Here, as discussed, in light of plaintiff's allegations, Coutu took part in plaintiff's and the insured's business transaction, and thus, is subject to § 551(2)(b).[2]

---

[2] Put another way, Coutu cannot reasonably expect to lob facts into a business transaction, such as Bensusan being able to act as an appraiser under an insurance policy requiring an impartial appraiser, and

7

This leaves whether Coutu failed to disclose "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of facts from being misleading." RESTATEMENT (SECOND) OF TORTS § 551(2)(b).  The Court finds that Coutu did allegedly fail to disclose such matters.  Notably, Coutu is alleged to have urged the selection of Bensusan as an appraiser, even though the insurance policy required the selection of an impartial appraiser and Coutu knew that Bensusan had a financial interest in the appraisal.

As a result, the Court finds that both Coutu and Bensusan had a duty to disclose in this case, and thus, the Court rejects defendants' objection to the Magistrate Judge's recommendation that plaintiff be allowed to add a claim for exemplary damages.

**b.  Plaintiff's RICO and COCCA Claims**

Defendants first object to the Magistrate Judge's finding that plaintiff plausibly pled a pattern of racketeering activity.  (ECF No. 170 at 9-16.)  Upon closer inspection, however, defendants frequently fail to offer any real objection to the Magistrate Judge's findings in this regard.  At first, defendants assert that the allegations with respect to the RICO/COCCA claims are the same in the Second Amended Complaint ("SAC") as they are in the First Amended Complaint ("FAC").  (*Id*. at 10-13.)  To whatever extent that may be accurate or not, defendants still do not challenge the Magistrate Judge's finding that the allegations plausibly allege a pattern of racketeering.  Defendants next assert that the sending of an appraisal demand cannot satisfy the mailing/wire requirement.  (*Id*. at 13-14.)  This is more of an objection, but, defendants fail to address the Magistrate Judge's finding that the actual mailing or wiring need not be fraudulent.  (*See* ECF No. 166 at 13, 15-16.)  Instead,

---

then walk away unscathed when those facts cause mayhem to the business transaction.  In allegedly creating the mayhem, Coutu became part of the transaction.

use of United States mails or wires need only be for the purpose of executing a fraudulent scheme. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991). Here, that is precisely what plaintiff alleged in alleging that defendants used the mailing of the appraisal demand in order to ensure that their fraudulent scheme could begin and succeed.

Defendants next raise a series of questions concerning plaintiff's selection of an appraiser in the underlying arbitration. (ECF No. 170 at 14-15.) Any issues concerning plaintiff's appraiser, however, are not before the Court, and the Court will not dismiss plaintiff's RICO/COCCA claims merely because defendants believe that plaintiff has committed similar conduct. Defendants next assert that plaintiff's allegations are insufficient to plausibly allege predicate acts necessary for a pattern of racketeering activity. (*Id*. at 15-16.) Defendants do not challenge any particular finding of the Magistrate Judge, though, in doing so. Moreover, defendants cite no support for their arguments. Finally, in one, brief sentence, defendants assert that there are no factual allegations of a threat of continuing criminal conduct. (*Id*. at 16.) The Court does not consider this brief mention of an issue to be a specific objection to the Magistrate Judge's finding that continuity could be established by a closed period of repeated conduct. (*See* ECF No. 166 at 14.) As a result, the Court rejects defendants' objections to the Magistrate Judge's finding that plaintiff plausibly alleged a pattern of racketeering activity.

Defendants second objection is to the Magistrate Judge's finding that plaintiff plausibly alleged a RICO enterprise. (ECF No. 170 at 16-18.) Although defendants spend a little bit of time with this objection, their only actual objection to the Magistrate Judge's findings is that the Magistrate Judge focused upon one fact—that Bensusan was appointed an appraiser and Coutu an adjuster in six other cases—to find a RICO enterprise. (*See id*. at 17-18.) That, however, is an

9

entirely inaccurate summary of the Magistrate Judge's finding in this regard. The Magistrate Judge did not focus upon one fact; the Magistrate Judge does not even mention the other cases Bensusan and Coutu are alleged to have been a part. (*See* ECF No. 166 at 17-18.) Instead, the Magistrate Judge, entirely appropriately, focused upon the multiple allegations of the SAC related to the purported enterprise, and then explained why those allegations were sufficient to plausibly allege an "association-in-fact" enterprise. (*See id*.) The Court finds nothing wrong with that analysis and finding.

Defendants third objection is to the Magistrate Judge's finding that plaintiff plausibly alleged standing for purposes of RICO. (ECF No. 170 at 18-20.) Although the Court may agree with the issues defendants present—to the extent that the issues may prove to be challenges to plaintiff's ultimate success—those issues must be played out at the summary-judgment stage of proceedings, rather than the current motion-to-dismiss stage. As of now, plaintiff has alleged injury in the form of having to pay an inflated appraisal price and litigation fees from an unwarranted bad faith claim. The Court certainly finds it *plausible* that plaintiff suffered these injuries due to defendants' alleged conduct in, *inter alia*, having a biased appraiser affect the ultimate appraisal price, which then led to the bad faith claim being filed. Whether plaintiff will be able to *prove*, or even establish a genuine issue of material facts as to, whether its injuries were proximately caused by defendants' alleged conduct, is an entirely different matter. But it is one that is not to be decided today.[3] As a result, the

---

[3] The Court does note, however, its failure to understand what plaintiff means when it alleges that its appraiser would not have signed or agreed to the apprisal award if Bensusan's relationship with Coutu had been disclosed. (*See* ECF No. 128-1 at ¶ 35.) As defendants assert, it would appear more reasonable to assume that, if plaintiff's appraiser did not agree with the appraisal award, he would not have agreed to it. (*See* ECF No. 170 at 19.) Put another way, assuming that plaintiff's appraiser was not biased against plaintiff, there would appear no reason why he agreed to an appraisal award other than because he agreed with that award. To be clear, if plaintiff intends to proceed down this road, the Court will expect much greater explanation and factual development should this case reach summary judgment.

Court rejects defendants' objections to the Magistrate Judge's finding that RICO standing was plausibly alleged.[4]

**5.     Final Matters**

Also pending before the Court is a September 13, 2017 Report and Recommendation (ECF No. 120), recommending granting in part and denying in part defendants' motion to dismiss the FAC. In light of the Court's findings *supra*, however, the FAC is now no longer the operative complaint in this case. The operative complaint is the SAC. Therefore, the Court finds the September 13, 2017 Report and Recommendation to be moot. The same is true of defendants' motion to dismiss the FAC (ECF No. 65). Another pleading currently pending is defendants motion to dismiss the FAC, pursuant to Fed.R.Civ.P. 12(b)(1) (ECF Nos. 178, 179). For the same reason, the Court finds the Fed.R.Civ.P. 12(b)(1) motion to be moot. The same is true of plaintiff's motion for an extension of time to respond to the Fed.R.Civ.P. 12(b)(1) motion (ECF No. 182).

**6.     Conclusion**

For the reasons set forth herein, the Court:

(a)     ADOPTS IN PART the R&R (ECF No. 166);

(b)     GRANTS the motion to amend (ECF No. 128);

(c)     REJECTS defendants' Objections to the R&R (ECF No. 170);

(d)     REJECTS AS MOOT the September 13, 2017 Report and Recommendation (ECF No. 120);

(e)     DENIES AS MOOT defendants' motion to dismiss (ECF No. 65);

---

[4] Defendants raise a final argument in their Objections related to plaintiff's remedies under the insurance policy (ECF No. 170 at 20), but this does not appear directed to any particular finding of the Magistrate Judge, and thus, the Court does not further address it.

11

(f)      DENIES AS MOOT defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) (ECF No. 179); and

(g)      DENIES AS MOOT plaintiff's motion for an extension of time to respond (ECF No. 182).

Plaintiff is ORDERED to file a clean copy of its Second Amended Complaint (ECF No. 128-1) as a separate docket entry.

**SO ORDERED.**

DATED this 28th day of March, 2018.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge