IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00209-RM-NYW

CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin corporation,

    Plaintiff,

v.

PHILLIP MARSHALL COUTU, an individual,
POWER ADJUSTERS, INC., a Colorado corporation,
JUDAH LEON BENSUSAN, an individual, and
ATLANTIS CLAIMS SERVICES, LLC, a Florida limited liability company,

    Defendants.

## AMENDED ORDER ON MOTION TO COMPEL

Magistrate Judge Nina Y. Wang

This matter is before the court on Defendants' Motion to Compel Discovery Filed Pursuant to Minute Order Dated April 9, 2018 ("Motion to Compel" or "Motion"). [#189]. The undersigned considers the Motion to Compel pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and the Memorandum dated April 18, 2018 [#190]. Upon review of the Parties' briefing [#157; #159; #171], the applicable case law, the entire docket, the documents submitted for *in camera* review, and the Parties' comments offered at the January 30, 2018 Discovery Conference, this court **GRANTS IN PART and DENIES IN PART** the Motion to Compel.

## BACKGROUND

This court has discussed the background of this case in its prior Recommendation and Orders, *see e.g.*, [#103; #120], and does so here only as it pertains to the discovery issue before the court. This case arises from an appraisal award issued to Plaintiff Church Mutual Insurance

Company's ("Plaintiff" or "Church Mutual") policyholder Montview Boulevard Presbyterian Church ("Montview"), which Church Mutual contends was artificially inflated for Defendants Phillip Marshall Coutu, Power Adjusters, Inc. ("Power Adjusters"), Judah Leon Bensusan, and Atlantis Claims Services, LLC's ("Atlantis Claims") (collectively, "Defendants") own economic gains. In its original Complaint Plaintiff alleged two claims against Defendants: (1) civil conspiracy and (2) fraudulent concealment. [*Id.*]. Plaintiff filed its First Amended Complaint ("FAC") on April 25, 2017. In issuing a Recommendation on Defendants' Joint Motion to Dismiss the FAC [#65], the undersigned recommended dismissing only Plaintiff's claims under the federal Racketeering Influenced and Corrupt Organizations Act ("RICO") and Colorado Organized Crime Control Act ("COCCA"). [#120]. The undersigned also limited discovery to the "Montview matter and the relationships between the four Defendants." *See* [#103 at 7].

Plaintiff then filed its Motion for Leave to File Second Amended Complaint ("Motion to Amend") on October 6, 2017. [#128]. This court recommended granting Plaintiff leave to file a Second Amended Complaint ("SAC"), which the presiding judge, the Honorable Raymond P. Moore, adopted in part.[1] *See* [#166; #183]. The SAC is now the operative complaint in this matter and asserts claims against all Defendants for: (1) civil conspiracy ("Claim I"); (2) fraudulent concealment ("Claim II"); (3) federal civil RICO violations ("Claim III"); (4) federal civil RICO conspiracy ("Claim IV"); and (5) state civil COCCA violations ("Claim V"). The SAC also includes a prayer for exemplary damages under Colo. Rev. Stat. § 13-21-102. [#184].

On January 11, 2018, the Parties submitted a "Joint Statement of the Parties to Magistrate Nina Wang Framing Discovery Dispute – Scope of Deposition of Nicholas Cassidy" (the "Joint

---

[1] In doing so, Judge Moore rejected as moot the undersigned's Recommendation on the Motion to Dismiss [#120], denied as moot the Motion to Dismiss [#65], and denied as moot Defendants' Rule 12(b)(1) Motion to Dismiss [#179] and Plaintiff's Motion for an Extension of Time to Respond to the Rule 12(b)(1) Motion to Dismiss [#182]. *See* [#183].

Statement"). [#143]. The main issue identified by the Joint Statement was "the applicability of the attorney-client privilege and work product privilege during the deposition of former Senter Goldfarb attorney Mr. Nicholas Cassidy." [*Id.* at 1]. Church Mutual invoked the attorney-client privilege to preclude discovery or disclosure of documents prepared by the law firm of Senter Goldfarb & Rice, LLC ("Senter Goldfarb") relating to the appraisal of the Montview insurance claim. As the Joint Statement made clear, Mr. Cassidy was a former Senter Goldfarb attorney at the time of the Montview appraisal process, who had several communications with Church Mutual's designated appraiser Mr. William McConnell. [*Id.*]. Defendants sought to depose Mr. Cassidy about his communications with Mr. McConnell and Church Mutual during the Montview appraisal process. [*Id.*]. Church Mutual argues that these communications are protected from discovery or disclosure under both the attorney-client privilege and the work product doctrine, because the appraisal process is an adversarial process and Senter Goldfarb was retained in anticipation of litigation. *See* [#143-1; #143-2; #157]. Defendants counter that neither privilege protects Mr. Cassidy's communications with Mr. McConnell or Church Mutual because, although Mr. Cassidy is an attorney, he acted in the capacity of a "file handler" or claims investigator regarding the Montview appraisal. *See* [#143-1; #143-2; #159; #171].

The Parties appeared before the undersigned for a Discovery Conference on January 30, 2018, to discuss the attorney-client privilege and work product doctrine issues, among other discovery disputes. *See* [#152]. Ahead of the Discovery Conference Church Mutual submitted several documents for *in camera* review to support its invocation of both privileges. [#156 (subject to Level 3 Restriction)]. At the conclusion of the Discovery Conference this court ordered the Parties to submit supplemental briefing on the privileges issue, and directed Church Mutual to provide to the court for *in camera* review a copy of the engagement letter between

3

Church Mutual and Senter Goldfarb. [#152]. No such engagement letter exists, but Church Mutual provided the court with two additional documents it believes supports its position. The Parties have since submitted their supplemental briefing on the issue, including Defendants' response brief addressing Church Mutual's exhibits attached to its supplement brief and the instant Motion to Compel. *See* [#157; #159; #171; #189]. The Motion is ripe for resolution.

## LEGAL STANDARDS

### I. Rule 26(b)(1)

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* This scope for discovery does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26 effective December 1, 2015, purposefully removed that phrase. *See* Advisory Committee Notes to 2015 Amendments to Rule 26(b)(1) ("The former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery"; *In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 563 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that the phrase had been used incorrectly by parties and courts to define the scope of discovery, which "might swallow any other limitation on the scope of discovery." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment).

The applicable test is whether the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of

4

Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. In defining the scope of appropriate discovery, the Parties and the court are directed to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

## II. Rule 37(a)(1)

Pursuant to Rule 37(a)(1), a party may move for a court order compelling disclosure or discovery, and must certify that she "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). A motion to compel may include a party's failure to produce documents requested pursuant to Rule 34. *See* Fed. R. Civ. P 37(a)(3)(B)(iv). "The party moving to compel discovery must prove that the opposing party's answers are incomplete[,]" and the "party objecting to discovery must establish that the requested discovery does not fall under the scope of relevance as defined in Rule 26(b)(1)." *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D 561, 566 (D. Colo. 2010). Ultimately, "[t]he administration of the rule[] lies necessarily within the province of the trial court with power to fashion such orders [as] may be deemed proper to vouchsafe full discovery for the just, speedy and inexpensive determination of the lawsuit." *Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966).

# ANALYSIS

## I. Attorney-Client Privilege & Work Product Doctrine

Though not specifically addressed by the Parties, the issue of the attorney-client privilege appears to relate to elements of Plaintiff's state law claims, *e.g.*, what Church Mutual and its representatives knew, and what they relied upon in making their payment determinations. Thus, Colorado substantive law governs the scope and application of the attorney-client privilege. *See White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1424 (10th Cir. 1990) ("In a civil action based upon a state cause of action, state law controls the determination of privileges."). By contrast, "the work product privilege is governed by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (citation and quotation omitted).

Colorado has codified the attorney-client privilege in pertinent part as follows:

> "An attorney shall not be examined without the consent of his client as to any communication made by the client to him or his advice given thereon in the course of professional employment..."

Colo.Rev.Stat. § 13–90–107(b). The law is clear that the attorney-client privilege inures to the benefit and protection of the client to allow a client to gain counsel, advice, or direction with respect to the client's rights and obligations confidentially. *See Mountain States Tel. & Tel. Co. v. DiFede ("DiFede")*, 780 P.2d 533, 541 (Colo. 1989).

The work product doctrine is reflected in Fed. R. Civ. P. 26(b)(3)(A), which generally protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for a party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party seeking to invoke the

attorney-client privilege or the work product doctrine bears the burden of establishing that it attaches.

Neither the attorney-client privilege nor the work product doctrine is absolute as either may be waived. The burden of proving such waiver rests upon the party seeking to overcome the privilege. *DiFede*, 780 P.2d at 542; *accord. H. ex rel. Holder v. Gold Fields Mining Corp.*, 239 F.R.D. 652, 655 (N.D. Okla. 2005) ("[T]he majority view is that the party claiming waiver has the burden of proof on that issue."). A waiver of the attorney-client privilege or work product doctrine may be either express or implied. A waiver may be express when a party affirmatively consents to disclosure of the information. *See, e.g.*, *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (explaining that a client may waive the attorney-client privilege by disclosing privileged communications to a third-party; noting, "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." (citation and internal quotations omitted)); *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) ("The work-product privilege may be waived by the voluntary release of materials otherwise protected by it." (citation and quotation omitted)). Waiver may also be implied through conduct. *See, e.g.*, *People v. Madera*, 112 P.3d 688, 691 (Colo. 2005) ("Courts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because 'any other rule would enable the client to use as a sword the protection which is awarded him as a shield.'" (citations omitted)).

Unlike the attorney-client privilege, work product immunity is not automatically waived by any disclosure to a third party. *In re Sealed Case*, 676 F.2d 793, 802–10 (D.D.C. 1982). The general standard for determining whether protected work product must be disclosed is where (1) the materials are otherwise discoverable under Rule 26(b)(1); and (2) the party shows that it

has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3). If disclosure of work product is ordered by the court, the court must protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation. Fed. R. Civ. P. 26(b)(3)(B).

### A. Privilege Law Concerning Insurance Claims & Investigations

"Not every document drafted by counsel or every communication with counsel is protected by the attorney-client privilege." *Hurtado v. Passmore & Sons, L.L.C.*, No. 10-cv-00625-MSK-KLM, 2011 WL 2533698, at *4 (D. Colo. June 27, 2011) (citing *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Court For City & Cty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986) [hereinafter *Nat'l Farmers Union*]). "For example, the attorney-client privilege does not protect the results of a factual investigation conducted by counsel relating to the origination of an insurance policy and the validity of a claim." *Colo. Mills, LLC v. Philadelphia Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at *3 (D. Colo. Apr. 2, 2013) (citing *Nat'l Farmers Union*, 718 P.2d at 1048–49); *accord Cornhusker Cas. Co. v. Skaj*, No. 11-cv-110-S, 2012 WL 12541136, at *2 (D. Wyo. Apr. 5, 2012) (holding the work product doctrine did not protect disclosure of the insurer's investigative file, because doing so "would allow an insurance company to insulate all investigative materials generated in every case involving serious injuries long before any coverage decisions are made or threats of litigation arise."). Indeed, "if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the [attorney-client] privilege . . . nor the work product privilege protects communications from a lawyer to an insurance carrier." *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App. 1998) (citing *Nat'l Farmers*

8

*Union*, 718 P.2d at 1044); *accord Smith v. Marten Transp., Ltd.*, No. 10-cv-0293-WYD-KMT, 2010 WL 5313537, at *2–4 (D. Colo. Dec. 17, 2010) (holding the neither the attorney-client privilege nor work product doctrine applied to communications by an attorney acting as a claims investigator regarding a claim investigation or communications with a witness).

Typically, claim investigations arising in the first-party context, like the claim at issue in the underlying *Montview* case, are "made in the ordinary course of business and are discoverable[.]" *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993) ("When an insured presents a first party claim, he is asking for payment under the terms of the insurance contract between him and the insurance company, and the insurance company owes him a duty to adjust his claim in good faith. There is no initial contemplation of litigation."). To the extent such communications are protected by the attorney-client privilege, courts consider whether (1) the information was provided by agents of the corporate client "to counsel acting as counsel" at the direction of supervisors; (2) the information was necessary for the provision of legal advice; (3) the agents were aware that their communications were made for the purpose of counsel rendering legal advice to the corporate client; and (4) the communications were treated as confidential. *See Bonanno v. The Quizno's Franchise Co.*, LLC, No. 06-cv-02358-WYD-KLM, 2008 WL 1801173, at *3 (D. Colo. Apr. 18, 2008) (citing *Nat'l Farmers Union*, 718 P.2d at 1049 (discussing *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981))).

**B.    Application**

Church Mutual has submitted several exhibits for *in camera* review that it claims are protected from discovery or disclosure by the attorney-client privilege and work product doctrine. Church Mutual asserts that these documents are communications between Mr. Cassidy

9

and Mr. Bednarski that occurred during and are related to the Montview appraisal process. For this reason, Church Mutual also objects to Defendants' proposed deposition of Mr. Cassidy.

Defendants argue that Mr. Cassidy's role was as a "file handler", not as an attorney providing legal advice. Defendants highlight the Policy's appraisal provision that "allows the policyholder or [Church Mutual] the opportunity to resolve differences in damages via a specific and alternative dispute resolution process." [#152-1 at 4]. The Policy then defines the role of a "file handler," whose responsibilities include notifying the supervisor or manager of the appraisal demand, identifying the appropriate appraisers for Church Mutual, providing all pertinent file information to Church Mutual's appraiser, notifying the appraiser of information required under the Policy and the legal jurisdiction, and regularly following the claim and obtaining needed updates for the supervisor. *See* [*id.*]. According to Defendants, Mr. Cassidy was not acting as legal counsel for Plaintiff and, therefore, cannot invoke the attorney-client privilege or work product doctrine to shield discovery into his communications with Mr. Bednarski.

The court first observes that the roles of claims handler and attorney are not mutually exclusive. *See W. Nat'l Bank of Denver v. Emp'rs Ins. Of Wausau*, 109 F.R.D. 55, 57 (D. Colo. 1985) (noting that "investigations by a person who is an attorney but acting in the capacity of an investigator and adjustor for the insurance company" prepares an investigative file in the ordinary course of the insurer's business). The mere fact that an attorney is involved in a communication or drafting does not automatically render that communication or document subject to the attorney-client privilege or work product doctrine. *See Perez v. Alegria*, No. 15-MC-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (rejecting a blanket privilege objection for the basis for prohibiting his deposition or document discovery when the attorney

10

was also a fact witness); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLB-DWB, 2007 WL 625809, at *6 (D. Kan. Feb. 23, 2007) (observing that privilege does not necessarily attach when an attorney also performed duties as a consultant involved in competitive business activities and decision-making). Accordingly, while the court discusses relevant time periods below, it notes that the determination of whether the work product doctrine or attorney-client privilege attaches is driven not by a particular chronology, but by the nature of the services rendered by Senter Goldfarb's attorneys to Church Mutual at any given time.

> 1. **Work Product**

Church Mutual contends that the work product doctrine (as did the attorney-client privilege) attached to Mr. Cassidy's communications when Mr. Coutu sent Montview's demand for appraisal on January 23, 2013. *See* [#157]. Defendants counter that no such privilege attached until October 10, 2013, following the appraisal process *and* Mr. Coutu's email to Mr. Cassidy threatening litigation. *See* [#152-1 at 20]. Church Mutual provides no authority for (and this court's research did not yield any) its proposition that Mr. Coutu's "reputation" as litigious made litigation reasonably anticipated as of January 23, 2013. The mere retention of counsel is also insufficient to establish a reasonable anticipation of litigation; at least one of our sister courts in this Circuit has held:

> But merely retaining counsel does not make documents thereafter prepared protectable under the work product doctrine. Retaining counsel to assist with an investigation and evaluation of insured property [] hardly provides reason to find that Defendant has already shifted from its ordinary course of business in investigating a loss to now acting in anticipation of litigation.

*Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, No. 12-1008-JTM-GLR, 2012 WL 5499555, at *7 (D. Kan. Nov. 13, 2012). As discussed above, there is also no contemporaneous retention letter that indicates that Senter Goldfarb was retained to provide specific advice because Church

Mutual reasonably anticipated litigation. Nor does the correspondence exchanged between Senter Goldfarb and Church Mutual, as reviewed *in camera*, establish that Church Mutual reasonably anticipated litigation. And while the invocation of the appraisal provision can, in some instances, be construed by courts as the commencement of an adversarial proceeding, *see Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-CV-02063-CMA-KLM, 2014 WL 1464400, at *5 (D. Colo. Apr. 14, 2014), simply involving counsel in an appraisal does not necessarily give rise to work product protection, *cf. Mundy v. Indian Hills Country Club*, No. 06-2268-KHV, 2007 WL 852619, at *5 (D. Kan. Mar. 16, 2007). Given the record before it, this court concludes that Church Mutual has failed to carry its burden of establishing a date earlier than **October 10, 2013** when litigation became reasonably anticipated despite some reference to potential bad faith claims in an October 2, 2013 email from Mr. Cassidy. Accordingly, any documents compiled by Senter Goldfarb prior to October 10, 2013 are not subject to the work product doctrine.

### 2. Attorney-Client Privilege

Distinct from the applicability of the work product doctrine, communications between attorneys and clients for the purpose of seeking and rendering legal advice may be privileged. The touchstone of the attorney-client privilege, however, is that legal advice is sought and exchanged. The privilege does not attach when an attorney is acting in a different capacity. As discussed, when an attorney functions as a claims handler, his communications with his client are not protected by the attorney-client privilege.

As to the documents produced for *in camera* review, this court concludes that only a handful of documents are protected by the attorney-client privilege and/or work product doctrine such that discovery into Mr. Cassidy's communications with Mr. Bednarski are not entirely shielded by the privileges. Church Mutual identifies sixteen (16) documents in its privilege log

as protected under the attorney-client privilege or the work product doctrine. Without disclosing any information that the Parties may deem privileged, the court considers each document in turn.

***Priv-CMIC_000368-369 ("Doc. 1")*** – Doc. 1 contains email correspondences between James Bednarski and Arthur Kutzer of Senter Goldfarb dated January 25 and 28, 2013. The emails cover the initiation of the appraisal process by Montview, and include discussions of the case file, the Policy's appraisal provision, relevant appraisal deadlines, and Mr. Kutzer's recommendation of Mr. McConnell. These correspondences do not seek or contain any legal advice, and are not shielded by the attorney-client privilege or the work product doctrine. Indeed, Mr. Kutzer's involvement in the selection of an appraiser indicates that he is functioning as "file handler" as defined by the Policy rather than as legal counsel.

***Priv-CMIC_000366-367 ("Doc. 2")*** – Doc. 2 is a January 30, 2013 email from Messrs. Kutzer and Cassidy to Mr. Bednarski providing Mr. Bednarski a "draft reservation of rights and request for Proof of Loss" directed to Mr. Coutu, and advising Mr. Bednarski of Mr. Coutu's cancellation of a meeting with a structural engineer named Mr. Poon. This correspondence falls within the responsibilities of "file handler" and is not privileged.

***Priv-CMIC_000360-363 ("Doc. 3")*** **–** Doc. 3 is an April 2, 2013 email from Messrs. Kutzer and Cassidy to Mr. Bednarski regarding Church Mutual's response to Mr. Coutu's sworn proof of loss and Mr. Coutu's failures to provide corroborating documentation for Montview's proof of less, which the Policy requires. The email also indicates Church Mutual's reservation of its rights to deny coverage and to any defenses it may have. This information covers the Montview investigation and is not subject to the attorney-client privilege or the work product doctrine.

***Priv-CMIC_000357-357 ("Doc. 4")*** – Doc. 4 is a May 1, 2013 email from Mr. Cassidy to Mr. Bednarski informing Mr. Bednarski that Montview had finished its appraisal, and that the parties' appraisers were hoping to meet to discuss the results. This correspondence fits within "file handler" duties, and is not subject to the attorney-client privilege or work product doctrine.

***Priv-CMIC_000354-356 ("Doc. 5")*** – Doc. 5 is a May 23, 2013 email from Messrs. Kutzer and Cassidy to Mr. Bednarski regarding Mr. McConnell's discussions with Mr. Bensusan about the scope of work and cost of repairs to Montview's roof. The email notes discrepancies between each appraisal, and discusses whether some of Mr. Bensusan's estimates are covered under the Policy. There is also mention of Mr. Bensusan's refusal to provide invoices required under the policy, as well as Church Mutual's position that Mr. Bensusan's appraisal is unreasonable. Though there is discussion about submitting the claim to an umpire, the email ends "please contact us to discuss further handling of this claim." Again, this correspondence meets the "file handler" definition, and is not subject to the attorney-client privilege or work product doctrine.

***Priv-CMIC_000349-353 ("Doc. 6")*** – Doc. 6 consists of two documents. The first is a June 27, 2013 email from Messrs. Kutzer and Cassidy to Mr. Bednarski discussing the continued disagreement between Mr. Bensusan's appraisal and Mr. McConnell's appraisal. It also suggests that it "may be wise to begin settlement negotiations," which the court in *Colorado Mills, LLC* makes clear is relevant to a first-party bad faith claim and is not protected by the attorney-client privilege. *See* 2013 WL 1340649, at *8. The June 27, 2013 email also falls within the "file handler's" duty to update Church Mutual on the progress of the claim. The second document is a January 26, 2012 estimated cost of repair prepared by Mr. McConnell; this, too, is not protected under the attorney-client privilege or work product doctrine.

*Priv-CMIC_000346-346 ("Doc. 7")* – Doc. 7 is a September 10, 2013 email from Mr. Cassidy to Mr. Bednarski providing an update from Mr. McConnell regarding Mr. Kezer's selection as an umpire. This falls squarely within the "file handler's" responsibilities and is not subject to the attorney-client privilege or work product doctrine.

*Priv-CMIC_000337-342 ("Doc. 8")* – Doc. 8 consists of several documents. The first is an October 2, 2013 email from Messrs. Kutzer and Cassidy to Mr. Bednarski regarding the appraisal award and proceedings. There is mention of a conversation Mr. Bensusan and Mr. Kezer had with Mr. McConnell regarding bad faith claims based on Church Mutual's communications with Mr. McConnell, but the email ends with "please contact us to discuss further handling." The remaining documents are the appraisal award and DORA bulletin. Doc. 8 is not subject to the attorney-client privilege or work product doctrine.

*Priv-CMIC_000335-336 ("Doc. 9")* – Doc. 9 is an October 10, 2013 email from Messrs. Kutzer and Cassidy to Mr. Bednarski regarding a phone call with Mr. Coutu about the possibility of settling Montview's claim. In that conversation Mr. Coutu discussed the potential claims Montview may have against Church Mutual (Mr. Coutu even memorializes that conversation in an email to Mr. Cassidy [#152-1 at 20]).[2] Messrs. Cassidy and Kutzer offer recommendations on how Church Mutual should proceed. Although the email concludes with "please contact us to discuss further handling", the court construes Messrs. Kutzer and Cassidy's opinions on how to proceed against potential bad faith claims as legal advice and, thus, the work product doctrine and attorney-client privilege shield discovery of Doc. 9.

*Priv-CMIC_000332-334 ("Doc. 10")* – Doc. 10 is an October 21, 2013 email from Messrs. Kutzer and Cassidy to Mr. Bednarski detailing the potential claims Montview may have

---

[2] This email reflects Mr. Coutu's threat of litigation, the basis for this court's conclusion that litigation appeared imminent as of October 10, 2013, for purposes of the work product doctrine.

against Church Mutual and discussing the viability of such claims. This document is protected by the work product doctrine and attorney-client privilege.

*Priv-CMIC_000331-331 ("Doc. 11")* – Doc. 11 is an October 29, 2013 email correspondence from Mr. Bednarski to Mr. Cassidy seeking Mr. Cassidy's "thoughts" on an unidentified letter and Mr. Cassidy's response. Without more, however, Church Mutual has failed to carry its burden of establishing that this document is privileged or protected by the work product doctrine.

*Priv-CMIC_000330-330 ("Doc. 12")* – Doc. 12 is a January 27, 2014 email from Messrs. Kutzer and Cassidy to Mr. Bednarski explaining that they had not heard from Montview or Mr. Coutu since Church Mutual paid the arbitration award, and asking if Church Mutual would like Senter Goldfarb to close its file. This correspondence fits within the "file handler" definition and is therefore not privileged or subject to the work product doctrine. It also reinforces the court's conclusion that Senter Goldfarb's role was primarily one to handle the adjustment of the claim through the appraisal process, as opposed to advising with respect to any anticipated litigation.

*Priv-CMIC_000329-329 ("Doc. 13")* – Doc. 13 is a February 28, 2014 email to Mr. Bednarski indicating that Senter Goldfarb's representation of Church Mutual had concluded, and advising Mr. Bednarski of Senter Goldfarb's file retention policy. This correspondence is not privileged or subject to the work product doctrine.

*Priv-CMIC_000327-328 ("Doc. 14")* – Doc. 14 is a June 3, 2014 email from Senter Goldfarb to Church Mutual's general counsel Mr. Grunenwald. The email discusses the filing of the Montview bad faith case in Denver County District Court, and provides advice as to Church Mutual's litigation strategy. This document is privileged under attorney-client privilege and work product doctrine.

*Priv-CMIC_000370-370 ("Doc. 15")* – Doc. 15 is a January 24, 2013 email from Mr. Bednarski to Mr. Kutzer stating that Church Mutual "would like your office to guide and direct the appraisal process on this one, lots of issues with it. We trust there are conflicts." Without more, Church Mutual fails to carry its burden of establishing that Senter Goldfarb is being retained as counsel rather than as a "file handler." Accordingly, this document is not subject to the attorney-client privilege or work product doctrine.

*Priv-CMIC_000371-371 ("Doc. 16")* – Doc. 16 is a January 24, 2013 email from Mr. Bednarski to Lynn Renlund discussing Mr. Kutzer's opinion regarding positions that might be available to Church Mutual during the appraisal. Though it uses legal terminology, the subject matter pertains to an interpretation of the policy for the purposes of appraisal rather than in anticipation of litigation, and, therefore, is not subject to the attorney-client privilege or the work product doctrine.

***

Based on the foregoing, this court concludes that neither the attorney-client privilege nor the work product doctrine completely precludes discovery into Mr. Cassidy's communications with Mr. Bednarski. This is because several of Mr. Cassidy's communications with Church Mutual or Mr. Bednarski indicate that Mr. Cassidy and Senter Goldfarb were engaged by Church Mutual to act as its "file handler" for Montview's insurance claim. Consistent with this Order, Defendants are permitted to take the deposition of Mr. Cassidy and Church Mutual is ORDERED to produce those documents that relate to Senter Goldfarb's handling of the appraisal process that contain no legal advice. Nothing within this Order shall preclude Church Mutual from asserting the attorney-client privilege or work product doctrine should Defendants seek information outside the scope of this Order. Any such assertion of privilege should be

accompanied by a privilege log that allows Defendants and this court to evaluate the invocation of attorney-client privilege or the work product doctrine as to any documents.

## II. Unclean Hands

The Parties also argue about the viability of an "unclean hands" affirmative defense that Defendants seek to advance. *Compare* [#157 at 7–10] *with* [#159 at 7–10]. Largely, the Parties dispute whether Defendants can even assert an equitable defense such as unclean hands to the legal claims alleged by Church Mutual. This inquiry is not properly before this court on the discovery disputes presented to the court. Further, as discussed during the Status Conference held on May 16, 2018, Plaintiff filed its response to the Second Amended Answer on May 22, 2018 in the form of a Motion to Dismiss Defendants' Abuse of Process counterclaim. [#199]. And, as articulated by Plaintiff's counsel, this Motion does not address any unclean hands affirmative defense, and focuses solely on the abuse of process counterclaim.

## CONCLUSION

Therefore, **IT IS ORDERED** that:

(1)  Defendants' Motion to Compel [#189] is **GRANTED IN PART and DENIED IN PART**;

(2)  Plaintiff is **COMPELLED to DISCLOSE** the communications identified in this Order as not subject to any attorney-client privilege or work product doctrine no later than **May 29, 2018**;

(3)  To the extent there are documents withheld on the basis of attorney-client privilege or the work product doctrine that are not reflected by Church Mutual's privilege log submitted to the court for consideration, Plaintiff is **COMPELLED to DISCLOSE** other

documents consistent with this Order and/or supplement its privilege log no later than **May 29, 2018**.

DATED:  May 25, 2018

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge